Tilghman C. J.
1. There is no condition annexed to this judgment, of such a nature as to prevent the plaintiff from taking out an execution in a reasonable time. The .-defendant had it in his power to demand a release upon doing a certain thing, which he might do, or not, at his pleasure. The plaintiff had no means of compelling him to do it. Therefore the plaintiff’s only remedy was by taking out an execution. No injury could arise from this, because the Court would always interfere in a summary way to prevent injustice and enforce the terms on which the judgment was entered.
2. It was decided by this Court, in Dunlop v. Speer, 3 Binn. 169, that the year and day did not run during the time in which an execution was suspended by the agreement of the parties, even though that agreement were not of record. Here the. agreement was of record, and although it does not expressly provide for any stay of execution, yet it must be intended, that the defendant should be allowed a reasonable time for procuring the release of CampbelPs warrant. If the plaintiff had taken out execution immediately, no doubt the Court would have set it aside on motion. It is not for the defendant, therefore, to complain, that the plaintiff allowed him time for procuring a release. And in fact, the defend *37 ant did not complain, nor did he make • any objection to the first fi.fa. as long as he had hopes, that the plaintiff could be compelled to take the land on an extent, at more than the Court, thought it was worth. I am, therefore, of opinion, that there was no/error in issuing the f. fa.
3. The plaintiff has in form relinquished the first execution, although in substance he has adhered to it, because he laid the second execution on the same land. It was immaterial to the defendant under which of these executions his land was sold, provided he was not oppressed by unnecessary costs, and from this the Court would relieve him on motion. 'We decided in M'Cullough v. Guetner, 1 Binn. 215, that after the jury have found, that the rents and profits will satisfy the judgment in seven years, the plaintiff cannot relinquish his execution without-leave, because if he could the defendant might be in a great measure deprived of the benefit of the act of assembly. But in the present case the inquest was set aside ; the matter then rested solely on the levy; and there is no authority, nor any reason against relinquishing the levy, provided, as I have before mentioned, the defendant be protected against unnecessary costs. This case was before the Court of Common Pleas on motion, and therefore it is to be presumed, the contrary not appearing, that they exercised their discretionary powers according to the equity of the case.
There was another objection made, but not much insisted on; that the reason assigned for setting aside the inquisition was not good, viz. that John Wells would not give the rent which he said tlieMand was worth. The Court had authority to set aside the proceedings, and were not obliged to give any reason. They were of opinion, that the jury were induced by some unfair practices to value the land too high. That is the truth of the matter. There was good reason, therefore, for quashing the inquisition. I am of opinion, that the judgment should be affirmed.
Yeates J.
(absent, but his opinion, which was as follows, was read.) The judgment entered in this cause in the Cqmmon Pleas is absolute in its terms. The mutual agreement of the parties was confirmed by the Court. Nothing was to be done on the part of Milford until Miller gave him a release of the warrant of Charles Campbell, for the lands *38 sold. The defendant below was subjected to the payment of three hundred dollars damages, until this was effected; but no time having been stipulated for the execution of this conveyanee, a reasonable time must be supposed to have been in the contemplation of the parties. It does not appear on the record, nor has it been insinuated, that the release was given or tendered; but it would have been more correct to have applied to the Court, before issuing the execution. At all events, however, the defendants have no reason to complain of the delay in issuing it: there could be no surprise on them, as they knew the terms on which an immediate execution was-suspended.
The reason given by the Court for setting aside the inquisition extending the lands levied on, was certainly not a sound one. An individual might well refuse to give the ascertained rent, and yet it might be a fair and reasonable sum. The Court, I readily admit, have a controul over the conduct of their officers, before whom an inquest of office has been executed. They may set aside an inquisition on the ground of misconduct in the jurors, or where it clearly appears, that the sum affixed is extravagantly high. If no reasons had been assigned for this act of the Court, I presume we could not interpose as a court of error; nor, as the case stands, can I see any propriety in our reversing the proceedings to the prejudice of a stranger to them, who has purchased the lands bona Jide, confiding in the decision of a court of justice, paid his money, and obtained a sheriff’s deed, which has received the sanction of that tribunal. Purchasers at sheriffs’ sales are always regarded with favour. At common law, independently of the provisions of the 9th section of the old act of 1705, (1 Sm. Laws, 61.) a sale by a sheriff under an execution, will stand good, although the judgment, on which the execution was founded, was afterwards reversed 8 Co. 96.
I fully concur in the opinion of the Court, delivered in December Term, 1798, between Hunt and McClure, that a plaintiff who has once made his election, cannot, as a matter of course, withdraw at.his own will a fieri facias levied on lands, and that the Court, on being applied to, will not set aside such execution without sufficient grounds. The Court will equally guard the interests of defendants as well as third persons, and be cautious that their interference shall work no *39 essential injury. The like decision took place between Morgan and Simpson, in the Circuit Court át Washington, in October, 1804, before Judge Smith and myself, when the plaintiff applied to the Court to set aside an execution levied on lands, with a professed design of chargihg the special bail in the suit. So also in M'Cullough et al. v. Guetner et al. 1 Binn. 215. Here an alias fieri facias was taken out returnable to March Term, 1809, after a fi. fa. had issued to September Term, 1806, upon which lands had been levied and extended. The inquisition was set aside, but the writ and levy thereon were allowed to remain in full force. It was therefore competent to the sheriff to hold a new inquisition without a new writ. The issuing of the alias fi. fa. was wholly superfluous and irregular, and without doubt would have been set aside on motion; although I can see no other injury done to the defendant below, than subjecting him to the payment of the prothonotary’s and sheriff’s fees on the alias fi. fa. The same lands were levied upon a second time. I view the alias fi. fa. as a voidable, but not as a void, writ. In Goodyere v. Ince, Cro. Jac. 246. Yelv. 179. a distinction is taken between a sale and delivery on an elegit to the party himself, and a sale .to a stranger on a fieri facias. When the sheriff sells a term to a stranger, although the execution be reversed, yet the defendant shall not by virtue thereof be restored to the term, but to the money; because the vendee comes duly thereby by act of law : aliter of the plaintiff himself to whom lands are delivered on an elegit. The case of Jeanes v. Wilkins, 1 Ves. 195, is peculiarly strong. There the creditor having the body of his debtor in execution under a ca. sa. the sheriff took out a fi. fa., seized a leasehold estate, and sold it after the return of the writ; and Lord Hardwicke held, that although the fi.fa. ought certainly not to have been taken out, yet it was not void. The sheriff might justify taking the leasehold by it, and so may the purchaser under the sheriff, who gains the title; otherwise it would be very hard, if it should be at the peril of the purchaser under a fi. fa. whether the proceedings were regular or not.
Here, Miller, or his administrator, must have been guilty of gross negligence, for although they must have known of the setting aside the inquisition in fune Term, 1808, and that the levy remained in force, they did not stir in the matter until *40 above three years afterwards, in February, 1812. I do not conceive, that our reversal of the alias fieri facias would seriously affect the title of the purchaser. The lands were levied under the original fi.fa. and afterwards condemned; a sale was made under a regular venditioni exponas, and the sheriff’s deed was duly acknowledged. But as such reversal may produce another law suit, I think myself warranted in my opinion, on the whole matter, that the judgment and proceedings in the Court of Common Pleas be affirmed.
Brackenridge J. concurred.
Judgment affirmed:.